Filed 8/14/25  P. v. Altamirano CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B323964 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA115776) |
| v. | |
| JOSE JESUS ALTAMIRANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Affirmed in part, reversed in part and remanded with directions.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

# INTRODUCTION

A jury convicted Jose Jesus Altamirano of first degree murder, possession of a firearm by a felon, and unlawful possession of ammunition, and found that Altamirano personally used a firearm in the commission of the murder. Altamirano represented himself at trial. Altamirano argues his murder conviction is invalid because the jury did not receive CALJIC No. 8.31 on implied malice second degree murder. He also raises three claims of sentencing error, including that the court should have stayed parts of his sentence, that it should have dismissed certain enhancements, and that he did not knowingly, intelligently, and voluntarily waive his right to a jury trial on the aggravating factors supporting an upper term sentence on the firearm possession count and firearm enhancement. We affirm Altamirano's murder conviction because any error in omitting CALJIC No. 8.31 was harmless. We vacate his sentence and remand for a full resentencing because the court erred in imposing upper term sentences on the felon in possession count and the firearm enhancement, and as to the firearm enhancement, the error was prejudicial.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Offenses and Information*

On October 25, 2020, Altamirano was on a break from his work as a commercial truck driver in the city of Wilmington. Altamirano encountered Gabriel Gonzales on Quay Avenue, an area "inhabited by transient encampments." After a confrontation, Altamirano shot Gonzales once in the head, killing him. Officers from the Los Angeles Police Department arrested Altamirano on November 19, 2020, and found a different loaded

firearm in the sleeping cabin of his truck. Police did not recover the murder weapon.

Altamirano was charged with murder (Pen. Code, § 187, subd. (a)[1]; count 1); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2); and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 3). The information alleged, as to count 1, that Altamirano personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)). The People also alleged Altamirano was previously convicted of a serious felony (§ 667, subd. (a)) and a serious and/or violent felony or "strike" within the meaning of the Three Strikes law (§§ 667, subd. (d), 1170.12, subd. (b)). This prior conviction was for attempted murder in 2007.

As to all counts, the information alleged the following aggravating factors: the offenses involved great violence and great bodily harm with a "high degree of cruelty, viciousness, and callousness" (Cal. Rules of Court, rule 4.421(a)(1)[2]); Altamirano was armed with and used a weapon in the offenses (rule 4.421(a)(2)); he engaged in violent conduct in the offenses that indicates a "serious danger to society" (rule 4.421(b)(1)); he had prior convictions or sustained juvenile delinquency petitions that are numerous and of increasing seriousness (rule 4.421(b)(2)); and he had served a prior term in prison or county jail (rule 4.421(b)(3)).

---

[1] Undesignated statutory references are to the Penal Code.

[2] Undesignated rule references are to the California Rules of Court.

B.    *The Jury Trial*

Altamirano proceeded to a jury trial and chose to represent himself.

The prosecution argued to the jury that Altamirano committed first degree murder.  The People introduced surveillance video footage showing Altamirano and Gonzales walking the same direction down Quay Avenue on opposite sides of the street around 2:30 p.m.  Gonzales was walking "ahead" of Altamirano.  Gonzales and Altamirano exchanged words, and Altamirano crossed the street and approached Gonzales.  Gonzales never moved toward Altamirano but "stayed in the same spot."  Altamirano pulled out a gun, racked the slide to chamber a bullet, held the gun to Gonzales's head, and pushed Gonzales against a fence.  Altamirano lowered the gun, and Gonzales turned and started to walk away, when Altamirano shot him once in the head.

Altamirano admitted he killed Gonzales but argued he acted in self-defense after Gonzales "stalk[ed]" and "threaten[ed]" him.  He testified he carried a firearm for self-protection and knew the area of the shooting to be "violent."  As he walked down Quay Avenue, Altamirano noticed Gonzales acting "erratically" and accusing Altamirano of "following [him] all day."  Gonzales "kind of approache[d]" Altamirano and repeatedly threatened to "come over there and I'll smoke you[]" and "kill you[]." Gonzales mentioned the "Wilmas gang" and warned "we'll kill you[] . . . right now."  Altamirano felt "absolute terror" and feared "[his] life was about to end at that moment."  "Next thing [he] kn[e]w," Altamirano drew his gun on Gonzales and pushed him up against the fence, then lowered the weapon.  Gonzales once again threatened to "kill" Altamirano and "turned," and Altamirano

4

"believe[d] that he was turning to remove a weapon and follow through with his threat." Altamirano raised and fired his gun once, and not knowing whether or where he struck Gonzales, he "turned around and . . . tried to get to safety as quick as possible."

C.     *Conviction and Sentence*

The jury found Altamirano guilty on all counts, finding the murder to be first degree and the firearm use enhancement to be true. The jury did not consider the prior strike conviction allegation or the aggravating factor allegations. As further detailed in the Discussion below, Altamirano admitted the prior strike conviction and agreed to dismiss the jury without submitting to it the aggravating factor allegations.

Altamirano requested an attorney to represent him at the final sentencing hearing.

The trial court sentenced Altamirano to a total term of 50 years to life, plus 22 years four months. The court imposed a term of 50 years to life on the murder count (doubled from 25 years to life due to the prior strike), plus the upper term of 10 years for the section 12022.5 firearm enhancement, and five years on a section 667, subdivision (a), prior serious felony enhancement. Consecutively, the court imposed the upper term of three years on count 2 for firearm possession, doubled to six years for the prior strike. On count 3 for ammunition possession, the court imposed a consecutive 16 months.

Altamirano timely appealed.

## DISCUSSION

Altamirano argues the trial court failed to instruct the jury on the lesser included offense of implied malice murder; the court

5

was required to stay his sentence on either count 2 or count 3 under section 654; the court should have dismissed his prior serious felony enhancement in the interest of justice under section 1385; the court erred by imposing an upper term sentence on count 2 and the firearm enhancement; and he received ineffective assistance of counsel at sentencing.

We conclude the omission of a jury instruction on implied malice murder was harmless and the court did not err by declining to dismiss the prior serious felony enhancement. But we agree the court erred by imposing an upper term sentence on count 2 and on the firearm enhancement where the aggravating factors were not found by the jury and Altamirano did not knowingly and intelligently waive his right to a jury trial, and we conclude the error was not harmless as to the firearm enhancement. The court also erred by failing to stay the sentence on count 2 or count 3 under section 654. We therefore vacate Altamirano's sentence and remand for resentencing.

A. *The Omission of a Jury Instruction on the Lesser Included Offense of Second Degree Implied Malice Murder Was Harmless*

Altamirano first argues the trial court erred by declining to instruct the jury with CALJIC No. 8.31 on second degree implied malice murder as a lesser included offense. Even assuming the court erred, the lack of instruction was harmless considering the other jury instructions and the jury's verdict.

1.     *Relevant Procedural History*

At trial, the court instructed the jury on willful, deliberate, and premeditated first degree murder; second degree murder; voluntary manslaughter; and justifiable homicide in self-defense.

As relevant here, the second degree murder instruction (CALJIC No. 8.30) read:  "Murder of the second degree is the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation."  The court also gave CALJIC No. 8.11, defining malice aforethought as follows:

"Malice" may be either express or implied.

Malice is express when there is manifested an intention unlawfully to kill a human being.

Malice is implied when:
1.     The killing resulted from an intentional act;
2.     The natural consequences of the act are dangerous to human life;
3.     The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.

The prosecution additionally asked the court give CALJIC No. 8.31 directed to second degree implied malice murder.[3]

---

[3]     CALJIC No. 8.31 reads:  "Murder of the second degree is the unlawful killing of a human being when:

7

CALJIC No. 8.31, the prosecution argued, "makes it clear that second degree murder can occur not only when there is an intention to kill but also through a conscious disregard of the danger to human life." The court declined to give CALJIC No. 8.31 reasoning that CALJIC No. 8.11 already defined implied malice for the purposes of murder. Altamirano agreed with the court that CALJIC No. 8.31 was not "necess[ar]y" but also stated "I'm not very proficient with these jury instructions."

As stated, the jury returned a verdict of willful, deliberate, and premeditated first degree murder.

2. *Governing Law and Standard of Review*

Second degree murder, including express and implied malice murder, is a lesser included offense of first degree murder, which (in addition to malice) requires premeditation, willfulness, and deliberation. (See *People v. Taylor* (2010) 48 Cal.4th 574, 623–624; see also *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 102.) Implied malice murder is a killing "'proximately caused by '"an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with

---

1. The killing resulted from an intentional act,

2. The natural consequences of the act are dangerous to human life, and

3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.

When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being."

8

conscious disregard for life.""'" (*People v. Cravens* (2012) 53 Cal.4th 500, 507.)

"'"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.'"'" (*People v. Souza* (2012) 54 Cal.4th 90, 114 (*Souza*); see *People v. Gonzalez* (2018) 5 Cal.5th 186, 196 (*Gonzalez*).) "Th[is] duty exists because of the right under the California Constitution '"to have the jury determine every material issue presented by the evidence."'" (*Gonzalez*, at p. 196.) Accordingly, "[a] trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.'" (*People v. Shockley* (2013) 58 Cal.4th 400, 403; accord, *Gonzalez*, at p. 196.)

"The reason for instructing the jury on lesser included offenses is to protect the jury's '"truth-ascertainment function."' [Citation.] A jury instructed on only the charged offense might be tempted to convict the defendant '"of a greater offense than that established by the evidence"' rather than acquit the defendant altogether, or it may be forced to acquit the defendant because the charged crime is not proven even though the '"evidence is sufficient to establish a lesser included offense."' [Citation.] Instructing the jury on lesser included offenses avoids presenting the jury with 'an "unwarranted all-or-nothing choice"' [citation], thereby 'protect[ing] both the defendant and the prosecution against a verdict contrary to the evidence.'" (*People v. Eid* (2014) 59 Cal.4th 650, 657.)

We independently review whether the trial court improperly failed to instruct the jury on a lesser included offense. (See *Souza*, *supra*, 54 Cal.4th at p. 113; *People v. Cole* (2004)

33 Cal.4th 1158, 1215.) If the trial court erred, we assess whether the error was harmless or prejudicial. (See *People v. Schuller* (2023) 15 Cal.5th 237, 250-251 (*Schuller*); *Gonzalez*, *supra*, 5 Cal.5th at pp. 195-196; see also Cal. Const., art. VI, § 13.) We further discuss the harmless error standard below.

3. *The* Watson *Harmless Error Standard Applies*

Generally, "[t]he failure to instruct on lesser included offenses supported by substantial evidence [i]s state law error" analyzed under the harmless error standard from *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Gonzalez*, *supra*, 5 Cal.5th at p. 196; see *id.* at p. 198 ["neither we nor the United States Supreme Court recognizes a similar duty to instruct on lesser included offenses under *federal constitutional* law—at least in noncapital cases"]; accord, *People v. Breverman* (1998) 19 Cal.4th 142, 172 ["federal law has no effect on the appropriate standard of California appellate review when, in a noncapital case, the defendant [argues] . . . the trial court failed *in its sua sponte duty* under California law to provide instructions . . . on all lesser included offenses"], disapproved by *Schuller*, *supra*, 15 Cal.5th 237.)

In *Schuller*, however, the California Supreme Court recently held the standard for federal constitutional error established by *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) applies where the defendant was tried for murder and the trial court failed to instruct on imperfect self-defense as supported by the evidence. (See *Schuller, supra*, 15 Cal.5th at p. 254.) The Court explained that a defendant who kills in imperfect self-defense is guilty of voluntary manslaughter, and to obtain a conviction for murder, the prosecution must prove the

10

absence of imperfect self-defense beyond a reasonable doubt. (See *id.* at pp. 252-253.) As to these circumstances, "*Chapman* review applies . . . to instructions that provide an incomplete or misleading description of what is necessary to establish an element of the offense." (*Schuller,* at p. 257; see *id.* at p. 243 [citing rule that "'[a] jury misinstruction that relieves the prosecution of its burden to prove an element of the crime . . . violates [the federal Constitution].'"].) *Schuller* emphasized its "conclusion is predicated on the 'unique' relationship between murder and voluntary manslaughter" and it "d[id] not otherwise modify the general rule that the failure to instruct on other forms of lesser included offenses in noncapital cases is an error of state law." (*Id.* at p. 260; see *id.* at p. 260, fn. 7 ["Our holding does of course apply to other forms of *voluntary manslaughter* . . . which operate identically to imperfect self-defense by negating the malice element of murder."].)

Altamirano argues that any "instructional error should be reviewed under *Chapman* because the trial court's failure to instruct on implied malice murder resulted in incomplete and misleading instructions on implied malice and second degree murder." But unlike imperfect self-defense in *Schuller*, raising the issue of implied malice does not require the prosecution to prove any additional elements of murder (e.g., establishing malice by disproving imperfect self-defense). Stated otherwise, if the jury was not offered a theory of implied malice murder, this did not relieve or alter the prosecution's burden on the other theories of murder charged at trial. (See *Schuller, supra,* 15 Cal.5th at pp. 243-244.)

11

We determine for these reasons that Altamirano's claim of error relies on state law and does not implicate the federal constitution. We analyze his arguments under the *Watson* standard for harmless-error review. (See *Gonzalez*, *supra*, 5 Cal.5th at p. 201 ["Because we are addressing state law error, defendants must show that a different result was reasonably probable under the *Watson* standard."].)

4. *The Omission of CALJIC No. 8.31 was Harmless*

Altamirano argues that substantial evidence supported a jury instruction (CALJIC No. 8.31) on second degree implied malice murder, and the court prejudicially failed to give this instruction.[4] We need not decide whether substantial evidence supported implied malice murder because, even assuming the court erred by omitting CALJIC No. 8.31, any error was harmless.

First, considering the instructions as a whole, the jury did consider the theory of second degree implied malice murder, and the addition of CALJIC No. 8.31 would not have created a

---

[4] The People argue Altamirano invited, forfeited, or waived this error by not objecting to CALJIC No. 8.31 in the trial court. Altamirano did not forfeit or waive any error because the trial court has a sua sponte duty to deliver lesser included instructions supported by substantial evidence. (See *People v. Brothers* (2015) 236 Cal.App.4th 24, 33, fn. 6.) Neither did Altamirano invite the error because the record does not reveal "a deliberate tactical purpose in resisting . . . the complained-of instruction." (*Souza*, *supra*, 54 Cal.4th at p. 114 [invited error doctrine does not apply to lesser included instruction error unless defendant "expresses a deliberate tactical purpose"]; accord, *People v. Valdez* (2004) 32 Cal.4th 73, 115.)

reasonable probability of a different result. (See *Watson*, *supra*, 46 Cal.2d at pp. 836-837.) We assess the harmlessness of instructional error "'from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction'" (*People v. Carrington* (2009) 47 Cal.4th 145, 192), and we also consider the arguments of counsel (see *People v. Cain* (1995) 10 Cal.4th 1, 37). (See *People v. Wright* (1988) 45 Cal.3d 1126, 1144-1145.)

Here, the jury received CALJIC No. 8.30 on second degree express malice murder, as well as CALJIC No. 8.11, defining express and implied malice. While the jury did not receive CALJIC No. 8.31 on second degree implied malice murder, as stated, the jury was instructed on implied malice murder through CALJIC No. 8.11. This instruction advised that a defendant is guilty of murder if he shows implied malice by intentionally performing an act dangerous to human life "with knowledge of the danger to, and with conscious disregard for, human life." (See *People v. Noguera* (1992) 4 Cal.4th 599, 648 [no instructional error where "[o]ther instructions given by the trial court . . . adequately covered the defense theory"].)

The prosecutor further explained second degree implied malice murder in closing. Specifically, the prosecutor described "malice aforethought is not just one thing" but two "theories"; it could be "that a person intended to kill" or that "they might not have intended [a killing] to occur, but they were aware of the risk and they disregarded it." The People argued Altamirano was guilty of murder if "[he] did an intentional act, for instance, pull the trigger of a handgun, and while [he] might not have intended to kill the other person, [he] would have been aware that shooting a person with a handgun carries a risk of killing that other

13

person and by pulling the trigger [he] disregarded that risk." The prosecutor also explained the difference between first and second degree murder, saying first degree requires "intent to kill, deliberation, premeditation. If you're missing one of those three special items then it's back to the default, second-degree murder. Still have malice aforethought which could be either of the two theories . . . . It could be intent to kill or it can be disregarding" a risk to human life. In this context, giving CALJIC No. 8.31 would not have produced a reasonable likelihood of a different result at trial.

The jury verdict further demonstrates that any failure to instruct on implied malice murder was harmless. "The prejudice arising from the failure to instruct on lesser included offenses and defenses creates a specific kind of risk": that the jury "faced . . . an all-or-nothing choice" between conviction on an unproven charged offense or acquittal. (*Gonzalez, supra,* 5 Cal.5th at p. 191 [reviewing for harmless error].) Here, the jury's verdict demonstrates it did not face such an all-or-nothing choice. By returning a verdict of first degree murder, the jury rejected the lesser included offense of second degree express malice murder (on which it was instructed), which requires greater culpability (intent to kill) than implied malice murder. Because the jury rejected second degree express malice murder in favor of first degree murder, "there is no reasonable probability that, had the jury been instructed on [second degree implied malice murder], it would have chosen that option." (*People v. Rogers* (2006) 39 Cal.4th 826, 884 [any error in failing to instruct on involuntary manslaughter was "harmless," where jury convicted defendant of first degree murder and "rejected the lesser options"]; accord, *People v. Dominguez* (1992)

14

11 Cal.App.4th 1342, 1353 [failure to instruct on grand theft as lesser included offense of robbery was harmless where jury rejected a different lesser included offense and "was not put to an improper all-or-nothing choice"].)

And finally, by returning a verdict of first degree murder, the jury necessarily found Altamirano premeditated and deliberated the killing, or that he "reflect[ed] and weigh[ed]" the considerations before shooting Gonzales. (See *People v. Ghobrial* (2018) 5 Cal.5th 250, 278 [defining deliberation and premeditation].) This finding was incompatible with a belief that Altamirano did not intend to kill Gonzales but merely acted with knowledge of and conscious disregard for a risk to human life. "'Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions.'" (*Gonzalez, supra,* 5 Cal.5th at p. 200, quoting *People v. Lewis* (2001) 25 Cal.4th 610, 646; see also *People v. Rangel* (2016) 62 Cal.4th 1192, 1228 [any error in failing to instruct on involuntary manslaughter based on defendant's intoxication was harmless where the "jury found defendant guilty of the first degree murders . . . and therefore necessarily found he had premeditated and deliberated . . . [which is] incompatible with unconsciousness"]; *People v. Wang* (2020) 46 Cal.App.5th 1055, 1071-1072 [jury finding of premeditation rendered harmless the failure to instruct on heat of passion defense].)

15

B.    *The Court Was Required to Stay the Sentence on Count 2 or Count 3 Under Section 654*

Altamirano argues, the People concede, and we agree the trial court erred by failing to stay his sentence under section 654 on either count 2 (felon in possession of a firearm) or count 3 (unlawful possession of ammunition).

As relevant here, section 654 provides:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  This provision "precludes multiple punishment for a single act or omission, or an indivisible course of conduct."  (*People v. Deloza* (1998) 18 Cal.4th 585, 591.)  "When a defendant is convicted of two or more offenses for which section 654 prohibits multiple punishment, the trial court must impose sentence for one of them and stay imposition of sentence for the others."  (*People v. Kramer* (2002) 29 Cal.4th 720, 722.)  When the underlying facts are undisputed, "the application of section 654 raises a question of law we review de novo."  (*People v. Corpening* (2016) 2 Cal.5th 307, 312.)  While Altamirano did not raise this objection at sentencing, "a section 654 claim is not waived by failing to object below."  (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

Altamirano argues his firearm and ammunition convictions arose from an indivisible course of conduct.  We agree because the evidence at Altamirano's trial showed "all of the ammunition was loaded into the firearm."  "Courts have found section 654 prohibits punishing a defendant for both being a felon in possession of a firearm and unlawful possession of ammunition when all of the ammunition in question was loaded into the

16

firearm or had been fired from it." (*People v. Broadbent* (2020) 47 Cal.App.5th 917, 922; accord, *People v. Sok* (2010) 181 Cal.App.4th 88, 100; *People v. Lopez* (2004) 119 Cal.App.4th 132, 138.) Because we otherwise remand for resentencing, we direct the trial court to stay the sentence on either count 2 or count 3 within its discretion under section 654. (See *People v. Mani* (2022) 74 Cal.App.5th 343, 381.)

C.  *The Court Did Not Abuse Its Discretion by Failing To Dismiss the Sentencing Enhancement Under Section 1385, Subdivision (c)*

Altamirano contends the trial court abused its discretion under section 1385, subdivision (c), by failing to dismiss his prior serious felony enhancement (see § 667, subd. (a)(1)).

1.  *Relevant Procedural History*

At the time of Altamirano's sentencing in 2022, Special Directive 20-08, issued by former Los Angeles County District Attorney George Gascon, "instructed deputy district attorneys in pending cases to move to dismiss or withdraw sentence enhancement allegations." (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 486 (*Nazir*).) Before trial, the prosecution moved to dismiss Altamirano's section 667, subdivision (a)(1), enhancement "pursuant to the internal directives placed upon me by D.A. George Gascon." The trial court denied this request and stated it would revisit the issue at sentencing.

At sentencing, without objection from Altamirano's counsel, the trial court imposed a sentence of five years on the section 667 enhancement. Altamirano's counsel did not request dismissal of the enhancement based on the presence of mitigating

17

circumstances.  The prosecution renewed its motion to dismiss the enhancement under Special Directive 20-08, and the court declined to do so, stating, "I realize it might be your directive by your boss but the court chooses to follow the law."

      2.     *Governing Law and Standard of Review*

In relevant part, section 1385, subdivision (c), provides that, "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).)  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any . . . mitigating circumstances . . . are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(2).)  As relevant here, the mitigating circumstances listed in section 1385, subdivision (c), include that "[m]ultiple enhancements are alleged in a single case" (§ 1385, subd. (c)(2)(B)); "[t]he application of an enhancement could result in a sentence of over 20 years" (§ 1385, subd. (c)(2)(C)); and "[t]he enhancement is based on a prior conviction that is over five years old" (§ 1385, subd. (c)(2)(H)).

We review the trial court's decision not to strike a sentence enhancement under section 1385, subdivision (a), for abuse of discretion.  (See *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298; *People v. Walker* (2022) 86 Cal.App.5th 386, 395; see also

18

*People v. Carmony* (2004) 33 Cal.4th 367, 378.)  Under this "deferential" standard, a court abuses its discretion if its ruling "'falls outside the bounds of reason' under the applicable law and the relevant facts."  (*People v. Williams* (1998) 17 Cal.4th 148, 162; see *People v. Garcia* (2024) 101 Cal.App.5th 848, 857; *People v. Vasquez* (2021) 72 Cal.App.5th 374, 381.)  "'To prove an abuse of discretion, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'"'"  (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988; see *People v. Lee* (2017) 16 Cal.App.5th 861, 988.)

### 3. *The Trial Court Did Not Abuse Its Discretion*

Altamirano raises two errors with the court's decision not to dismiss the section 667, subdivision (a)(1), enhancement. First, he argues the trial court misunderstood the scope of its discretion by failing to consider Special Directive 20-08.  Second, he argues the presence of mitigating factors "required dismissal of the enhancement" in his case.

Altamirano concedes his first argument is now moot.[5]  On December 3, 2024, newly elected Los Angeles County District Attorney Nathan Hochman issued Special Directives 24-04 and

---

[5]     This court requested supplemental briefing regarding the effect of Special Directives 24-04 and 24-05 on Altamirano's appeal.  Altamirano conceded and the People agreed that Altamirano's claim that the court failed to consider Special Directive 20-08 is now moot.

24-05, which rescinded Special Directive 20-08.[6]  Altamirano's argument is moot because we cannot provide Altamirano with the relief he seeks, since Special Directive 20-08 is no longer in effect and would not inform the trial court's sentencing decision on remand.  (See *In re D.P.* (2023) 14 Cal.5th 266, 276 ["A case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of [appellant], to grant him any effect[ive] relief.'""]; cf. *Ghost Golf, Inc. v. Newsom* (2024) 102 Cal.App.5th 88, 97 [appeal was moot where executive order at issue was rescinded].)

We determine the court did not otherwise abuse its discretion by declining to strike the section 667, subdivision (a)(1), enhancement under section 1385.  Altamirano argues three enumerated mitigating circumstances applied to his case: the presence of multiple enhancements (§ 1385, subd. (c)(2)(B)); application of an enhancement resulting in a sentence over 20 years (§ 1385, subd. (c)(2)(C)); and the enhancement was based on a prior conviction that was more than five years old, the 2007 attempted murder conviction (§ 1385, subd. (c)(2)(H)).  Given these mitigating circumstances, Altamirano contends "section 1385 require[s] dismissal of the enhancement unless prohibited by any initiative statute or if the trial court found 'that dismissal of the enhancement would endanger public safety.'  (§ 1385, subd. (c)(1) & (c)(2).)."

---

[6]    We take judicial notice of Special Directives 24-04 and 24-05.  (See *Nazir*, *supra*, 79 Cal.App.5th at p. 487, fn. 2 [judicially noticing special directive under Evidence Code section 452, subdivision (c), as a policy of an executive agency].)  We also grant Altamirano's request for judicial notice of Special Directive 20-08.  (See *ibid.*)

Altamirano does not argue that the trial court failed to assign "great weight" to these circumstances or that the court improperly weighed the mitigating circumstances against any countervailing factors.

As an initial matter, Altamirano forfeited this argument because at sentencing he did not request dismissal of the section 667, subdivision (a)(1), enhancement based on mitigating circumstances. Even addressing the argument on the merits, Altamirano does not demonstrate error. In *People v. Walker* (2024) 16 Cal.5th 1024, the California Supreme Court held that even when enumerated mitigating circumstances are present, "section 1385, subdivision (c)(2) does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Walker,* at p. 1033.) In other words, "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements [under section 1385] provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Id.* at p. 1029.) Accordingly, the trial court was not required to dismiss Altamirano's section 667, subdivision (a)(1), enhancement because of the presence of mitigating circumstances.

D.      *The Court Erred by Imposing an Upper Term Sentence on Count 2 and the Firearm Enhancement Because Altamirano Did Not Validly Waive His Right to a Jury Trial on the Aggravating Circumstances*

Altamirano argues the trial court erred "by relying on aggravating factors that were not properly proven" to impose the upper term on count 2 and on the section 12022.5 firearm

enhancement.  He contends "he did not make a valid waiver of his right to a jury trial on the aggravating circumstances because [his waiver] was not informed and voluntary."  We agree Altamirano did not properly waive his jury trial right for the aggravating factors and therefore vacate Altamirano's sentence and remand for resentencing.

1.  *Relevant Procedural History*

Before the jury returned a verdict, the court discussed the aggravating factors alleged against Altamirano.  The court explained, "Technically you have a right to have the jurors decide whether or not [these] factor[s] ha[ve] been proven beyond a reasonable doubt. . . .  [O]r you can choose to admit the aggravating factors just like you would admit the strike convictions or [have] a court trial on the aggravating factors." Altamirano asked, "If I understand it correctly, it's basically the same as enhancements—right?—It's just pretty much to add more time on top of the time that you are already sentenced to?" The court replied that the aggravating factors "wouldn't change anything . . . on the murder" because the "potential max on that is 50 to life because of your strike [conviction]."  It explained that on "[t]he gun use, as alleged by the prosecution . . . in order to give you the high term of ten years, I would have to find one or more of those aggravating factors to be true."  The court further explained that if Altamirano were convicted of voluntary manslaughter, it could sentence him to the upper term of 11 years on that count, based on the aggravating factors.

Altamirano stated, "I think I can wrap my brain around that eventually.  I would rather visit that issue after we get a verdict."  The court agreed and asked, "let's assume, wors[t] case

22

scenario, that they come back guilty on the murder, do you still want them to make a separate decision regarding the aggravating factors?"  Altamirano asserted, "I don't think it'll make a huge difference.  I'm facing the rest of my life," and the court responded, "Right.  They don't have a big impact because I'm going to run the gun stuff concurrent anyway."

After closing arguments and the reading of the jury instructions, the jury indicated it had reached a verdict.  Before reading the verdict, the court raised the issue of the aggravating factors.  The following colloquy occurred:

Court:     There are also some aggravating factors.  We talked a
           little bit about that.  I did not include them in these
           verdict[] forms because you asked to have them
           bifurcated, meaning decide what the charge is first
           and then we will go to the aggravating factors.

           The aggravating factors, one is that this offense
           involved great violence, great bodily injury or threat
           of great bodily harm.  If the jury comes back with the
           verdict on the murder charge, that has already been
           proven.

           The next aggravating factor . . . is that you were
           armed with and used a weapon.  If the jury comes
           back with the gun use, that has already been
           determined.

The next factor is that you engaged in violent conduct in committing the offense. If they come back with the murder, that has already been proven.

And the next factor is that you suffered prior convictions as an adult. That they are numerous or of increasing seriousness. So when you testified, you admitted a prior grand theft, the prior attempted murder. So I suppose that they could come back—you could ask them to come back as to whether that is increasing seriousness but it seems to me like it would be.

And the last one is that you have served a prior prison term. . . . [Section] 1170(b)(3) allows me to make these determinations based on a certified copy of the record or what was proven at trial.

I'm saying all of that to you because if the jury comes back with murder verdicts, I'm wondering whether or not you were asking for us to have another decision made by them on the aggravating factors?

Altamirano: If they come back guilty on the murder, your honor, I don't think that would really make a big difference really.

Court:     Right. I think even if they come back with voluntary manslaughter, there are factors here that have already been proven. You used a gun and that it is

24

still great bodily injury, then I don't think the jury would need to make that decision. I'm asking if it's okay with you if we don't ask them to make those decisions?

Altamirano: I think we have already established that even voluntary [manslaughter] without me stretching out [sic] is in the 30-year range; so I don't think it would make a huge difference.

The prosecutor stated that "[u]nless Mr. Altamirano is explicitly stipulating to any of the aggravating factors, I'm asking that there still either be a court trial or a jury trial on them given that it is such a new law, and I'm not confident that the court can infer, should there be a guilty verdict on count 1, that that automatically means some of the aggravating factors have automatically been proven." The court asked, "How would it change the sentence? If it is first degree, I'm not choosing a triad. If it is second degree, I'm not choosing a triad. It is whatever it is and the gun use." The prosecutor asserted "it would only be relevant on count 1 if he is convicted of voluntary manslaughter" but "for Counts 2 and 3 it would be relevant regardless." The court decided, "Let's see what the verdicts are, and then we'll talk."

The jury then found Altamirano guilty on all counts. The jury did not consider the prior strike conviction allegation or the aggravating factor allegations. The court stated, "Given the conversation that we had, I think we can release this jury and let everybody go. Everybody agree?" The People agreed, and Mr. Altamirano replied, "Yes."

25

At Altamirano's sentencing, the prosecution requested a total sentence of 50 years to life, plus 16 years. The trial court imposed a sentence of 50 years to life, plus 22 years four months, finding "that this is an aggravating type of murder," not "some kind of self-defense gone awry." The court stated it did not find Altamirano "credible at all . . . that he was feeling any threats" because "[t]hat is not consistent with his actions nor what you can see on the [surveillance] video in terms of his behavior before and after the shooting." The court explained:

> Mr. Altamirano drew the gun, jammed the victim up against the wall, and seemed to be dressing him down. I think the more realistic situation here was that Mr. Altamirano felt disrespected and didn't like it, not that the victim was threatening him.

> He didn't like being disrespected by someone who was transient, who he felt was beneath him, and that was very clear from his comments both before trial and during trial. . . .

> Mr. Altamirano lied, clearly, when he said he didn't know whether or not he hit the victim with his shot. The shot was to . . . the victim's head. The victim dropped instantaneously to the ground. The wound was very clear. And to say he did not know and that's why he left the scene without calling police, without rendering aid, without so much as giving the victim a second look on the ground was chilling.

Although not argued at trial, I was also very concerned that Mr. Altamirano ejected the magazine about 80 feet from the location of the crime. To me that is very intentional because he was expecting law enforcement to look for prints off of that magazine and direct them to somebody else who committed this crime, which to me shows a great deal of poise and thought after having just shot somebody in the head and concerns me greatly that this is not the first time he has done such a thing. Because that takes a lot of thought at that time to try to misdirect law enforcement.

I believe that is why he was so calm at the time when law enforcement first spoke to him. Because he thought for sure that magazine would have fingerprints or DNA from somebody else who loaded that gun.

He then got rid of that gun. It's not the same gun that was found later. He left the scene. He got into his vehicle and left California. But for some outstanding police work . . . perhaps Mr. Altamirano would have gotten away with this case, with this murder.

On this basis, the court first declined to strike Altamirano's prior strike conviction. The court then selected the upper term of 10 years on the section 12022.5 firearm enhancement "because of the factors that I have delineated and I believe there are

27

aggravating factors as well as his prior criminal history is getting more and more serious." As to count 2, the court noted "its concern that after a troubling event Mr. Altamirano would choose to arm himself again when he knows he's not allowed to have guns" and stated it would impose the upper term of three years "because of the aggravating factor, again, the prior convictions, the criminal convictions." The court imposed these upper terms consecutively to count 1, totaling 16 years of Altamirano's sentence and marking an eight-year increase from the applicable middle terms. (See § 12022.5, subd. (a)(1) [three, four or 10 year sentencing triad]; §§ 29800, subd. (a), 18, subd. (a) [16 month, two or three year triad]; § 667, subd. (e)(1) [determinate term doubled by prior strike conviction]; see also *People v. Sasser* (2015) 61 Cal.4th 1, 12 [enhancement terms not doubled].)

> 2. *Governing Law and Standard of Review*

The Sixth Amendment right to a jury trial prohibits a court from imposing a higher sentence "based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham v. California* (2007) 549 U.S. 270, 275.) Rather, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury . . . and established beyond a reasonable doubt." (*Cunningham*, at p. 281; accord, *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) This includes the facts underlying aggravating factors, special circumstance allegations, or sentencing enhancements. (See *People v. Myles* (2012) 53 Cal.4th 1181, 1220 [upper term sentencing enhancement violates Sixth Amendment if "none of the aggravating factors on which the court relied to impose them had been found true by the jury or

28

admitted by [defendant]"]; *People v. Weaver* (2012) 53 Cal.4th 1056, 1074 [same, for special circumstances].)

California's determinate sentencing scheme incorporates this constitutional principle. Section 1170 provides, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms," "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."[7] (§ 1170, subds. (b)(1), (b)(2).) Section 1170.1 provides identically for the upper term on sentencing enhancements that are "punishable by one of three terms." (§ 1170.1, subds. (d)(1), (d)(2).) Notwithstanding these provisions, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

---

[7] Effective January 1, 2022, the Legislature enacted Senate Bill No. 567 (2020-2021 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3), amending section 1170. Where courts previously enjoyed "'broad discretion'" to choose between the lower, middle, and upper sentencing terms, Senate Bill No. 567 constrained the sentencing court to select the upper term only where aggravating factors are present. (See *People v. Lynch* (2024) 16 Cal.5th 730, 747-748, 773.)

Altamirano's trial occurred in May 2022 and his sentencing took place on August 23, 2022. The court noted at trial that Senate Bill No. 567 was "new law . . . and I haven't done a trial where I had to plead these [aggravating factors]."

Of course, a defendant may waive his right to a jury trial on the aggravating factors, provided he does so expressly. (See *People v. French* (2008) 43 Cal.4th 36, 47 (*French*) [jury trial on aggravating factors "is guaranteed by the federal Constitution" and thus "require[s] an express waiver"].) The waiver must also be "'knowing and intelligent, that is, ""made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,'""' as well as voluntary ""'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.""""' (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*); see *People v. Collins* (2001) 26 Cal.4th 297, 305 (*Collins*) [describing these waiver requirements as "constitutional"].)

We review the validity of a jury trial waiver under "'the totality of the circumstances' unique to each case." (*People v. Morelos* (2022) 13 Cal.5th 722, 753 (*Morelos*); accord, *Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) Relevant circumstances can include "the nature of the colloquy prior to the court's acceptance of a waiver, the presence of counsel and references to discussions between the defendant and counsel regarding the jury right, and the existence and contents of a written waiver." (*People v. Daniels* (2017) 3 Cal.5th 961, 991 (*Daniels*) (lead opn. of Cuéllar, J.).) Ultimately, while there is no "rigid formula or particular form of words that a trial court must use in taking a jury waiver" (*Sivongxxay*, at p. 169), the record must "'affirmatively show[]'" the waiver is "'voluntary and intelligent under the totality of the circumstances.'" (*Collins*, *supra*, 26 Cal.4th at p. 310; see *id.* at p. 308; accord, *Daniels*, at p. 991

(lead opn. of Cuéllar, J.); *id.* at p. 1018 (conc. & dis. opn. of Corrigan, J.).)

An invalid waiver of the right to a jury trial on the defendant's guilt or innocence is structural error requiring automatic reversal of the judgment. (See *Collins*, *supra*, 26 Cal.4th at p. 312.) But when a defendant is denied the right to a jury trial on aggravating factors, this error is not structural but subject to harmless error analysis, which we discuss in Part D.4. (See *People v. Lynch* (2024) 16 Cal.5th 730, 750-751, 755 (*Lynch*).)

3. *Under the Circumstances, Altamirano Did Not Knowingly and Intelligently Waive His Right to a Jury Trial on the Aggravating Factors*

Altamirano contends that he did not knowingly, intelligently, or voluntarily waive his right to a jury trial on the aggravating factors justifying his upper term sentences.[8] He argues that the court "failed to discuss the waiver after the verdicts were taken as it had indicated it would do;" the court provided "erroneous information" by stating certain "aggravating

---

[8] The People argue Altamirano has forfeited this argument because he "failed to object when the trial court discussed the aggravating factors, or imposed the upper terms." We decline to find forfeiture because "a '[d]efendant's failure to object . . . [does] not preclude his asserting on appeal that he was denied his constitutional right to a jury trial.'" (*French, supra,* 43 Cal.4th at p. 46; accord, *People v. Saunders* (1993) 5 Cal.4th 580, 589, fn. 5; see *People v. Vera* (1997) 15 Cal.4th 269, 276 [articulating an exception to forfeiture for "the deprivation of certain fundamental, constitutional rights"], overruled on other grounds as stated in *French,* at p. 47, fn. 3.)

31

factors would be proven if the jury reached a guilty verdict on the murder;" and the court represented that "true findings on the aggravating factors would not make much of a difference if he was convicted of murder because the court would impose concurrent sentences on counts 2 and 3 . . . which it failed to do." Considering the totality of the circumstances, we agree. The record does not """*affirmatively* show[]"""" that Altamirano's waiver was knowing, intelligent, and voluntary. (*Daniels*, *supra*, 3 Cal.5th at p. 991 (lead opn. of Cuéllar, J.).)

In *Daniels*, *supra*, 3 Cal.5th 961, the California Supreme Court held a self-represented capital defendant invalidly waived his right to a jury trial at the penalty phase. (*Id.* at p. 966.) The trial court in *Daniels* "confirmed that defendant understood he was choosing to have the court make findings about his guilt, the truth of the special circumstances, and ultimately the penalty," but the court did not explain "the nature of the jury right he was waiving," it did not ask whether defendant understood that right, and the defendant was not advised by counsel or informed by any written waiver. (*Id.* at p. 1029 (conc. opn. of Kruger, J.).)

In *Collins*, *supra*, 26 Cal.4th 297, a jury trial waiver was also invalid where the trial court "informed [defendant] that he would receive 'some benefit' if he waived his right to a jury trial, although the court could not specify what the benefit would be." (*Id.* at p. 300.) The court otherwise thoroughly advised the defendant of the nature of the jury trial right and consequences of waiver. (See *id.* at pp. 301-302, 308-309.) Yet the California Supreme Court noted the "impropriety" of a trial court's "promise of more lenient treatment in sentencing if the defendant waives trial by jury" and held this "presented a 'substantial danger of

32

unintentional coercion'" such that the waiver was not knowing, intelligent, and voluntary. (*Id.* at pp. 304, 307, 309.)

By contrast, in *Morelos, supra,* 13 Cal.5th 722, the court upheld a jury trial waiver by a self-represented defendant. (See *id.* at p. 754.) In that case, the trial court sufficiently advised the defendant "that he had a constitutional right to a jury, that the jury would be comprised of 12 individuals, that the jury would make a factual determination as to his guilt, and that he had a separate constitutional right to a jury at his penalty trial." (*Ibid.*) The trial court also advised of "the consequences of waiving such a trial: that [the defendant's] entire case . . . would be tried before a judge." (*Id.* at pp. 754-755.) This was sufficient given the defendant's personal "legal knowledge," defendant's "multiple conversations" with the prosecutor "concerning [his] desire to waive a jury," and the fact that he "was represented by counsel in his case for over two and a half years . . . up until less than a month before he entered his jury waiver," where the record reflected "he had discussed waiving a jury with his attorneys" before he moved to represent himself. (*Id.* at p. 756.) The defendant also "repeatedly expressed a desire to plead guilty" throughout the proceedings. (*Id.* at p. 755.)

The circumstances of Altamirano's waiver are akin to those in *Daniels*, because the record does not establish Altamirano was fully advised of the jury trial right. Here, Altamirano's waiver colloquy took place over three proceedings. At the first discussion of the aggravating factors, the trial court advised Altamirano had "a right to have the jurors decide whether or not [an aggravating] factor has been proven beyond a reasonable doubt," or he could "choose to admit the aggravating factors" or have "a court trial on the aggravating factors." However, the court did not explain the

33

difference between these proceedings or confirm Altamirano's understanding on this point.  The court also did not inform Altamirano the jury would need to reach a unanimous verdict on each aggravating factor.  (See *People v. McCray* (2023) 98 Cal.App.5th 260, 273 (*McCray*) [invalid waiver where court did not advise of "the basic mechanics of a jury trial or its differences from a bench trial" and "failed to explore [defendant's] understanding of *any* of these matters with him"]; *People v. Jones* (2018) 26 Cal.App.5th 420, 436-437 [same, where the trial court "only advised [defendant] that it alone would decide whether [she] was guilty or innocent" and did not "inquire whether [she] understood the nature of her right to a jury trial"]; *People v. Blancett* (2017) 15 Cal.App.5th 1200, 1206-107 [similar].)

What is more, the court told Altamirano at the second colloquy that if the jury found him guilty of murder or even voluntary manslaughter, the three aggravating factors pertaining to the circumstances of the crime would "already be[] proven" or "determined."  The People argue the court intended to advise that "if the jury found [Altamirano] guilty of murder or manslaughter, there is no logical reason to doubt it would also find the aggravating factors relating to the crime and gun use to be true."  But the court further stated that if the jury came back guilty, "I don't think the jury would need to make [a] decision" on the aggravating factors of gun use and great bodily injury.  Contrary to the court's statement, a guilty verdict does not always establish the jury would also find all the aggravating factors true beyond a reasonable doubt, especially those factors that "rest[] on a somewhat vague or subjective standard" and "require an imprecise quantitative or comparative evaluation of the facts." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840-842 (*Sandoval*),

34

superseded by statute as stated in *Lynch, supra*, 16 Cal.5th at
p. 756.)  In this way, the court's statement prevented Altamirano
from having a full understanding of the jury right that all
12 members must "reach a unanimous verdict based upon the
independent and impartial decision of each juror" on each
aggravating factor.  (*People v. Engelman* (2002) 28 Cal.4th 436,
444.)

      Further, as in *Collins*, we are not persuaded on this record
that Altamirano's waiver was voluntarily made, i.e., that
Altamirano made a """"free and deliberate choice.""""
(*Sivongxxay, supra*, 3 Cal.5th at p. 166.)  Rather, during the
waiver colloquy, the court stated to Altamirano that the
aggravating factors would not affect his sentence.  (See *Collins,
supra*, 26 Cal.4th at p. 309 [waiver was involuntary where "the
objective of the trial court's comments was to obtain defendant's
waiver of a fundamental constitutional right"].)  The court told
Altamirano in the initial colloquy that the aggravating factors
would not have a "big impact" if he were convicted of murder
because the court would "run the gun stuff concurrent anyway."
(See *id.* at p. 304 [court's offer of "'benefit'" for waiving jury trial
"amounted to an improper inducement"].)  In the second colloquy,
the court again stated that the aggravating factors "would [not]
change the sentence."  When the court inquired whether
Altamirano wanted the jury to decide the aggravating factors,
Altamirano agreed with the court that "[i]f they come back guilty
on the murder, . . . I don't think that would really make a big
difference really."

      The People argue *Collins* does not control because
Altamirano was not "induced" to waive his right to a jury trial by
the court's statement it would sentence counts 2 and 3

concurrently.  (See *People v. Dixon* (2007) 153 Cal.App.4th 985, 993-994 [court's promise of improper sentencing benefit did not affect waiver's validity where defendant decided against a waiver, then later waived right for other reasons and court "never again mentioned" the benefit].)  But like *Collins*, and unlike *Dixon*, the trial court here mentioned concurrent sentencing each time it discussed the waiver, and it accepted Altamirano's waiver moments after it stated the aggravating factors would not "change the sentence."  (See *Collins*, *supra*, 26 Cal.4th at pp. 302-303; *Dixon*, at pp. 993-994 [determining the "waiver and the improper promise are sufficiently separate in time to allow us to conclude with confidence that the improper promise did not induce the waiver"].)

Given the information Altamirano received about the nature of the jury's decision and the court's intended sentence if he waived the jury trial, we cannot say Altamirano validly waived his constitutional right to a jury trial on the aggravating factors.  (See *Collins*, *supra*, 26 Cal.4th at p. 309 [trial court's "assurances" to defendant that waiver would "benefit" him "presented a 'substantial danger of unintentional coercion'" "at odds with its judicial obligation to remain neutral and detached in evaluating the voluntariness of the waiver"]; cf. *Morelos*, *supra*, 13 Cal.5th at p. 757 [affirming waiver where "nothing in the record" suggested defendant was "pressured . . . into waiving a jury"].)  These circumstances were compounded by the fact that Altamirano was self-represented at the time he gave his waiver, his appointed counsel for sentencing did not represent him until the final sentencing hearing, and the record does not show Altamirano received advice from any other source.  (See *Morelos*, at p. 756 ["the absence of counsel may be 'a relevant factor' in

determining whether a defendant knowingly and intelligently waives his right to a jury trial"]; see *id*. at p. 759 [affirming waiver where defendant "had multiple conversations with the prosecutor about his jury trial waiver"]; *Daniels*, *supra*, 3 Cal.5th at p. 996 (lead opn. of Cuéllar, J.) ["The sparseness of the colloquy's substance in this case is especially conspicuous given that [defendant] was without the benefit of counsel when he proffered his waiver."].)

The People argue that Altamirano made a valid waiver under all the circumstances. They contend that he "decided to waive a jury trial because the aggravating factors would not make much of a difference if appellant were convicted . . . [as] he would be sentenced to more than 30 years and would essentially serve the rest of his life in prison." The totality of the circumstances does not support this view. While Altamirano agreed with the court the aggravating factors would not have a "big impact" if he were convicted of murder, Altamirano had no meaningful opportunity to revisit this position after he was convicted of first degree murder and the court announced it would "release this jury." (See *Morelos*, *supra*, 13 Cal.5th at pp. 757-758 [upholding waiver where defendant "did not have to make his waiver decision rashly or without time to reflect," distinguishing a "rushed, judge-driven sequence of events"].) We also note that Altamirano otherwise vigorously litigated his case, testifying in his own defense, cross-examining each witness, calling expert testimony, and, importantly, requesting the assistance of counsel for his final sentencing hearing. (Cf. *Morelos*, at p. 755 [confirming defendant knowingly waived jury trial right where he "made clear his desire" to plead guilty]; *Daniels*, *supra*, 3 Cal.5th at pp. 973, 1030 (conc. opn. of Kruger,

37

J.) [concluding a more informed waiver of a jury trial would not have been "irrelevant" to a self-represented defendant who "use[d] the law library" and expressed "'deep remorse'" during penalty phase proceedings].)

The People further identify Altamirano's previous "experience with the criminal justice system" as "demonstrat[ing] that he understood the right he was waiving." While this circumstance may be relevant, it does not outweigh the other circumstances present here. (See *McCray*, *supra*, 98 Cal.App.5th at pp. 276-277 ["relevant experience with the justice system" was not a "material distinction" where defendant was not advised of the nature of the jury trial right]; accord, *Daniels*, *supra*, 3 Cal.5th at p. 1001 (lead opn. of Cuéllar, J.) ["nothing in our prior cases supports the conclusion that a defendant's receipt of previous advisements is bound to satisfy the requirement that a subsequent waiver of a jury trial be knowing and intelligent"].)

In sum, Altamirano did not validly waive his constitutional right to a jury trial on the aggravating factors under the circumstances presented. Altamirano also did not admit the aggravating factors. (See *People v. Wiley* (2025) 17 Cal.5th 1069, 1084 ["[A]ny fact . . . that exposes a defendant to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial."].) As we explain below, we conclude the trial court erred when it found the aggravating factors true and imposed the upper term sentences on count 2 and the firearm enhancement. (See *ibid.* ["Only when aggravating facts have been proven as the Constitution requires may the court then rely on them to conclude, in its discretion, that those facts justify an upper term"]; *French*, *supra*, 43 Cal.4th at p. 48.)

4.  *The Court Erred by Imposing an Upper Term Sentence on Count 2 and the Firearm Enhancement, and the Error Was Not Harmless as to the Firearm Enhancement*

Altamirano argues we must remand for resentencing because "it is unknown whether the jury would have found all of the aggravating circumstances relied on by the court to be true." The People respond any error was harmless, because the jury would have found at least one aggravating factor true beyond a reasonable doubt, specifically that Altamirano had "convictions . . . of increasing seriousness." (See rule 4.421(b)(2).) The People submit it is reasonably probable the jury would have found all other aggravating factors true.

Recently, *Lynch*, *supra*, 16 Cal.5th 730 provided new guidance on the standard for harmless error pertaining to improperly proven aggravating factors. *Lynch* held that "when the trial court relies on unproven aggravating facts to impose an upper term sentence, . . . [t]he violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence." (*Id.* at pp. 768-769.) *Lynch* also "cautioned that a prejudice analysis . . . 'can be problematic'": "The reviewing court cannot assume that the record reflects all of the evidence that would have been presented to the jury, or that the defendant had the same incentive and opportunity at a sentencing hearing to contest the aggravating circumstance[s]. . . . "[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue

39

been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." . . . "Many of the aggravating circumstances described in the rules require an imprecise quantitative or comparative evaluation of the facts.""" (*Id.* at pp. 775-776.)  Applying this standard, *Lynch* affirmed that "the omission of a jury trial on facts underlying three of the aggravating circumstances was prejudicial: the crimes involved a *high degree* of cruelty, viciousness, and callousness; the victim was *particularly* vulnerable; and [defendant] poses a *serious* danger to society."  (*Id.* at p. 776.)

Here, the trial court imposed the upper term on count 2 based on "the aggravating factor [of] the prior convictions."  (See rule 4.421(b)(2) ["The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"].)  The trial court found this factor true based on Altamirano's certified record of conviction, but the Supreme Court recently recognized a Sixth Amendment right to a jury finding on the aggravating factor that a defendant's prior convictions are of "increasing seriousness." (See *Wiley*, *supra*, 17 Cal.5th at pp. 1082-1084 [reasoning that a true finding on this aggravating factor surpasses "the bare fact of a prior conviction" and "requires a comparison and evaluation of the relationship among a defendant's prior convictions, and a determination as to their relative seriousness"].)

The People argue "it is clear beyond a reasonable doubt that the jury would have made the same finding" and any error was harmless.  Here, Altamirano's prior convictions (as relevant to this aggravating factor) included a 2004 felony conviction for grand theft and a 2000 misdemeanor conviction for driving with a

suspended license.[9] We need not decide whether this error was harmless, i.e., whether any rational juror could conclude that these convictions were not of increasing seriousness (see *Wiley*, *supra*, 17 Cal.5th at pp. 1087-1090), because the trial court prejudicially relied on additional aggravating factors not found by the jury as to the section 12022.5 firearm enhancement.

After discussing the circumstances of the crime, the trial court also selected the upper term on the section 12022.5 firearm enhancement because of "aggravating factors as well as [Altamirano's] prior criminal history is getting more and more serious." The People acknowledge that, as to the section 12022.5 enhancement, the court impliedly found "the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, and callousness" (rule 4.421(a)(1)) and that Altamirano "engaged in

---

[9] Altamirano also had a 2007 conviction for attempted murder. Altamirano argues the court "was prohibited from using [his] prior attempted murder conviction as an aggravating factor because it imposed a five year enhancement pursuant to section 667, subdivision (a)(1) for the same prior conviction." We agree. Section 1170 provides a court "may not impose an upper term by using the fact of any enhancement upon which sentence is imposed." (§ 1170, subd. (b)(5); see *People v. Scott* (1994) 9 Cal.4th 331, 350 ["dual or overlapping use" of sentencing factors is prohibited].) On remand, the trial court shall not rely on Altamirano's attempted murder conviction to support both a sentencing enhancement and an aggravating factor. (See *People v. Fernandez* (1990) 226 Cal.App.3d 669, 680-681 ["use of [a] prior conviction both to enhance and impose an aggravated term" is "improper"].)

violent conduct that indicate[d] a serious danger to society" (rule 4.421(b)(1)).[10]

As to these aggravating factors, we cannot determine the jury would have found these true beyond a reasonable doubt because the factors ""'rest[] on a somewhat vague or subjective standard"'" of "great violence," "*high degree* of cruelty" and "*serious* danger to society." (*Lynch*, *supra*, 16 Cal.5th at pp. 775-777 [concluding these two aggravating factors were not established]; *People v. Whitten* (1994) 22 Cal.App.4th 1761, 1767 ["examination of aggravating . . . factors necessarily involves subjective determinations based upon objectively demonstrated facts"].) Rather, "[s]ome degree of speculation would necessarily be required for us to conclude the jury would have agreed with the trial court's evaluation." (*People v. Wandrey* (2022) 80 Cal.App.5th 962, 983; see *Sandoval*, *supra*, 41 Cal.4th at p. 841 [noting aggravating factor of "'callous[ness]'" entailed "findings relating to defendant's state of mind . . . [which] was hotly contested at trial"], superseded by statute as stated in *Lynch*, *supra*, 16 Cal.5th at p. 756; see *Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 71, 89 [aggravating factor of "serious danger to society" requires the jury to determine "whether the manner of the crime's commission was distinctively worse 'when compared to other ways in which such a crime could be committed'"].) For these reasons, the court prejudicially erred by imposing the upper term on Altamirano's section 12022.5 firearm enhancement on the basis that Altamirano posed a

---

[10] The court did not rely on the aggravating factors that Altamirano used a weapon in the commission of the offense (see rule 4.421(a)(2)) or that he had served a prior term in prison or county jail (see rule 4.421(b)(3)).

"serious danger to society" and acted with a "high degree of cruelty."

Accordingly, we vacate Altamirano's sentence and remand for a full resentencing, giving "'"the People an opportunity to retry"' the aggravating facts" and noting "[t]he court may rely on any properly proven aggravating facts, including prior convictions or facts necessarily found by the jury" on remand. (*Lynch, supra,* 16 Cal.5th at pp. 776-778; see *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"].) Because we remand for resentencing, we decline to address Altamirano's contention that he received ineffective assistance of counsel at sentencing.

## DISPOSITION

The judgment of conviction is affirmed. We reverse and vacate the sentence and direct the trial court to resentence Altamirano in accordance with amended sections 654 and 1170, subdivision (b), and any other applicable ameliorative legislation. We also direct the trial court to stay Altamirano's sentence on count 2 or 3 pursuant to section 654 as indicated in the opinion.

MARTINEZ, P. J.

We concur:

SEGAL, J.                    STONE, J.

43